SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gregory Nidez Valencia, Jr., | ) | No. CV 07-1294-PHX-DGC (MEA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Reyna, et al., | ) | |
| Defendants. | ) | |

Plaintiff Gregory Nidez Valencia, Jr. filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Amend. Comp. Doc. #15.)  Defendants Correctional Lieutenant Pfeiffer, Correctional Lieutenant Reyna, and Associate Deputy Warden Neese move to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies.[1]  (Doc. #48.)  The matter is ready for ruling. (Doc. ##51, 52.)  The Court will grant the motion and dismiss the action.

**I.    Background**

In Count I, Plaintiff alleged that over a period of a week to ten days he was subjected to a course of physical and sexual assault designed to coerce him to sign false murder confessions and to transfer funds from a trust fund that had been left to him by his father. Plaintiff contended that in violation of the Eighth Amendment and state law regarding torts

---

[1]The Court issued an Order, required under <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), informing Plaintiff of his obligation to respond and the evidence necessary to rebut Defendants' contentions.  (Doc. #49.)

of assault, aggravated assault, and sexual assault Reyna, Boggs, Control Room Officer Doe, Neese, Pfiefer, and Notary Doe maliciously and sadistically (1) used physical force without need or provocation or (2) failed to intervene to prevent the force and sexual assaults.  He alleged that various Defendants used stun guns on multiple occasions and that he suffered strokes.  He alleged multiple rapes by different Defendants as others stood by.  He asserted that various Defendants had on four occasions injected him using syringes containing the Hepatitis C virus and on one occasion injected him with the AIDS virus.  Plaintiff additionally claimed that Control Room Officer Doe, Neese, Pfiefer, and Notary Doe's failure to curb Reyna's and Bogg's physical and sexual abuse constituted deliberate indifference in violation of the Eighth Amendment.  Plaintiff alleged that he eventually signed the confession.

In Count II, Plaintiff alleged that Reyna, Boggs, Pfiefer, Garcia,  Powell, Ridgely, Kaz, and Strubbel maliciously and sadistically (1) compelled Plaintiff to sign false confessions and/or make false statements or (2) failed to intervene to prevent the coercion. He claimed to have been forced to make four videotaped confessions.  He also asserted that Reyna, Boggs, Pfiefer, Garcia, Powell, Buchella, Unklesbay, Katz, and Strubbel's submission of Plaintiff's false confessions, statements, and documentation constituted the "tort of false statements and/or documentation" under 18 U.S.C. § 1001.  In addition, he claims that Defendant Neese's failure to curb the coercion violated the Eighth Amendment.

In Count III, Plaintiff alleged that Reyna, Boggs, Pfiefer, and Neese violated his Fourteenth Amendment due process rights by failing to process his informal grievances, by compelling him to make and sign false statements, and by submitting his false statements and documents.  He claimed that they threatened to infect him with the AIDS virus.  He also asserted that Pfiefer and Neese's submission of his false confessions and statements into his institutional file constituted the "tort of false statements and/or documents" under 18 U.S.C. § 1001.

In Count IV, Plaintiff alleged that Reyna, Boggs, Pfiefer, Powell, and Garcia retaliated against Plaintiff for filing grievances when they unreasonably searched and seized Plaintiff's

1    documentation of his assaults.  He alleged that Defendants told him that they were not "going

2    to sit back and let you sue us."

3         In Count V, Plaintiff alleged that Neese, Pfiefer, and Nurse Doe failed to provide

4    adequate medical care in violation of the Eighth Amendment when they failed to provide

5    "blood testing for deadly disease[s] and treatment for his anus."

6         The Court held that liberally construed, Plaintiff stated (1) Eighth Amendment and

7    state law claims in Count I against Reyna, Boggs, Control Room Officer Doe, Pfiefer, Neese,

8    and Notary Doe; (2) Eighth Amendment claims in Count II against Reyna, Boggs, Pfiefer,

9    Garcia, Powell, Ridgely, and Neese; (3) Fourteenth Amendment due process claims in Count

10   III related to Reyna, Boggs, Pfiefer, and Neese submitting false statements and documents

11   and compelling Plaintiff to make and sign false statements; and (4) retaliation claims in

12   Count IV against Reyna, Boggs, Pfieffer, Powell, and Garcia.  (Doc. #14.)  The Court

13   dismissed the remaining Defendants and Count V.  (Id.)  But the Court noted that Plaintiff

14   had alleged that a criminal case involving the allegedly coerced confessions and statements

15   was currently ongoing and his prayer for relief included a request that his false confessions

16   and statements be precluded from his criminal proceedings.  (Id., ref. Doc. #15.)  His claims

17   appeared to "relate[] to rulings that will likely be made in a pending or anticipated criminal

18   trial."  Wallace v. Kato, 549 U.S. 384, 393-94 (2007).  The Court concluded that if the

19   criminal case was ongoing, a stay of the civil case would be appropriate.[2]  Id.

20        Because the Court could not determine at the time of screening pursuant to 28 U.S.C.

21   § 1915A(a) whether a dismissal, stay, or answer to the First Amended Complaint was

22   appropriate, the Court ordered that the civil action be served on Reyna, Boggs, Control Room

23   Officer John Doe, Neese, Pfiefer, Notary John Doe, Garcia, Powell, and Ridgely and gave

24   those Defendants 60 days after service of the First Amended Complaint within which to file

25

26        [2] The Court also noted that if Plaintiff was ultimately convicted in that criminal case
     and his conviction has not been reversed, expunged, or otherwise invalidated, those claims
27   in his First Amended Complaint that would imply the invalidity of his conviction would be
     barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  See Wallace, 549 U.S. at 393-
28   94.  The Court further noted that an answer would be appropriate to any remaining claims.

1  a brief: (1) providing the Court with the status of any criminal case against Plaintiff related
2  to the incidents described in the First Amended Complaint, and (2) discussing the
3  applicability of <u>Wallace</u> based on the status of the criminal case.  The Court also gave
4  Plaintiff 30 days after service of the brief to file a responsive brief.

5       On October 29, 2007, Defendants Reyna and Pfiefer filed the court-ordered Brief,
6  noting that Plaintiff had been found guilty in 1996 of charges including first-degree felony
7  murder and that no criminal charges or investigations were pending. (Doc. #27.) Defendants
8  concluded that, "[b]ecause it does not appear that there is a criminal case against Valencia
9  related to the incidents described in the First Amended Complaint, <u>Wallace</u> is inapplicable
10 here." (<u>Id.</u>) On November 14, 2007, Plaintiff filed a Reply to the Brief (Doc. #30), stating:
11 "In being there is no criminal case against Plaintiff, he agrees also that <u>Wallace v. Kato</u>, 127
12 S. Ct. 1091 (2007)[,] is inapplicable here." In light of the parties' agreement that <u>Wallace</u>
13 does not apply, the Court called for an answer to the First Amended Complaint. (Doc. #35.)

14 **II.    Motion to Dismiss**

15      **A.    Legal Standard**

16      The PLRA provides that a prisoner may not bring a lawsuit with respect to prison
17 conditions under § 1983 unless all available administrative remedies have been exhausted.
18 <u>See</u> 42 U.S.C. § 1997e(a); <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1050 (9th Cir. 2006);
19 <u>Brown v. Valoff</u>, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative
20 review process in accordance with the applicable rules. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81,
21 92 (2006). Exhaustion is required for all suits about prison life, <u>Porter v. Nussle</u>, 534 U.S.
22 516, 523 (2002), regardless of the type of relief offered through the administrative process,
23 <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

24      Exhaustion is an affirmative defense. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).
25 Defendants bear the burden of raising and proving the absence of exhaustion. <u>Wyatt</u>, 315
26 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
27 motion, a court may look beyond the pleadings to decide disputed issues of fact. <u>Id.</u> at 1119-
28 20. Further, a court has broad discretion as to the method to be used in resolving the factual

dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.     Parties' Contentions

#### 1.     Defendants

In support of their motion, Defendants include an internet site to the ADC Grievance Procedure (Doc. #48, Ex. A, Department Order (DO) 802); the declarations of Boggs, Pfiefer, Reyna, Neese, and Garcia (<u>id.</u>, Exs. B-F, respectively) and attachments, including work assignment and attendance reports; Plaintiff's 2007 Inmate Letters (<u>id.</u>, Ex. G); and ADC Inmate Letter Responses (<u>id.</u>, Ex. H).

Defendants assert that Plaintiff acknowledged in the Amended Complaint that ADC had administrative remedies available to him and did not use them but alleged that "Defendants Neese, Pfeiffer, Reyna, and Boggs denied [him] his rights to Due Process secured under the 14th Amendment to the United States Constitution.  (See Claim III.)." (Doc. #48 at 3-4, ref. Doc. #15.)  They note that in Count III, Plaintiff alleged the following regarding his failure to exhaust his administrative remedies:

  • On August 25, 2005, Neese stated that she had okayed Reyna's and Boggs conduct because Plaintiff didn't respect them, and she tore up Plaintiff's inmate letter and informal resolution addressed to Pfeifer. (Doc. # 15 at 5.)

  • On August 26, 2005, Neese, Reyna, and Boggs yelled at Plaintiff for submitting a second informal resolution and inmate letter addressed to Director Schriro, and Neese tore up that letter. (<u>Id.</u> at 5.)

  • On August 27, 2005, Pfeifer came to Plaintiff's cell, stated that Reyna, Boggs, and Neese had threatened her to prevent her from processing his third informal resolution or inmate letter addressed to Director Schriro, and she never processed the letter. (<u>Id.</u> at 5A.)

  • On September 1, 2005, Plaintiff "submitted an informal resolution after being compelled to give and sign false statements and a false confession at his psychological evaluation to CO III Pfeifer, but those went unprocessed. Realizing that his attempts to resolve the ongoing events through the grievance [process] at the prison were futile, [he] began to learn the law to address his claims through a civil suit."  (<u>Id.</u> at 5B.)

Defendants further note that to explain why Plaintiff has no copies of any of the inmate letters that he allegedly wrote, he alleged in Count IV that:

  • On August 29, 2005, Reyna and Boggs searched Plaintiff's cell and property while Pfeifer watched. Reyna and Boggs stated that "We're not going to sit back and let you sue us," and then wrongfully seized the copies of his informal resolutions, inmate

1    letters and HNRs (Health Needs Request form).  (Id. at 6.)

2    • On August 30, 2005, Reyna and Boggs searched his cell and property for any
     documentation related to the alleged events, but left after they found nothing.  (Id.)

3

4    • On August 31, 2005, Garcia and Powell searched his cell, threatened him, stated that
     "[w]e destroyed you and there isn't a damn thing you can do about it.  Neese gave us
     permission to," and then left after they found nothing.  (Id.)

5

6    • On September 2, 2005, Reyna and Boggs searched his cell and wrongfully seized
     his documents related to his psychological evaluation. (Id. at 6-6A.)

7         Defendants argue that Plaintiff  is "unequivocal" in terms of when and where these

8    alleged events took place and who was present.  (Doc. #48 at 5.)  But they assert that their

9    evidence shows that the events set out in the First Amended Complaint are "a work of

10   fiction."  (Id.)  Boggs attests that all of Plaintiff's allegations against him are fabricated and

11   that he was not even present at SMU II for most of the days that Plaintiff claims that Boggs

12   took some action against him.  (Id., Ex. B, Boggs Decl. ¶ 7.)  Specifically, Boggs attests that

13   he worked at the Phoenix Central Office as a STG Special Investigator starting on July 30,

14   2005.  (Boggs Decl. ¶ 3.)  He attests that does not recall going to ASPC-Eyman or SMU II

15   in his capacity as STG Special Investigator during August and September 2005.  (Id. ¶ 4.)

16   The only day that Boggs was at SMU II for all of the days that Plaintiff makes allegations

17   was August 27, 2005, when Boggs was working as a security officer because of needed

18   security shift coverage.  (Doc. #48 at 5, Boggs ¶¶ 5–6.)  And the only contact that Boggs

19   recalls having with Plaintiff was his initial STG debriefing in July 2005. (Boggs at ¶ 8.)

20        Defendants further assert that although Plaintiff was assigned to Pfeifer's CO III

21   caseload, she has no recollection of any particular issues or incidents related to him.  (Doc.

22   #48, Ex. C, Pfeifer Decl. ¶ 6.)  She attests that any contact that she may have had with

23   Plaintiff was professional and in furtherance of official duties as a CO III and that the

24   allegations against her are fabricated.  (Id. ¶¶  5-6.)  Pfeifer further attests that she did not

25   even work August 27 and 29, 2005, the two days that Plaintiff alleges that she watched as

26   Reyna and Boggs searched his cell and took his copies of his inmate letters.  (Id. ¶ 4.)

27        Likewise, Reyna and Neese attest that they have no independent recollection of

28   Plaintiff or any particular issues or incidents related to him and that the incidents are

1   fabricated.  (Doc. #48, Ex. D, Reyna Decl. ¶ 5, Ex. E, Neese Decl. ¶ 7.)  Garcia also attests

2   that the incidents are fabricated.  (Id., Ex. F, Garcia Decl. ¶ 5.)  Defendants assert that

3   Plaintiff's  Individual Inmate Detention Records, which kept track of his daily activity for

4   the relevant time period, do not reflect that anything unusual or significant happened. (Neese

5   Decl. ¶ 8.)  Furthermore, Defendants assert that on August 28, 2005 – a day that Plaintiff

6   makes allegations against Pfeifer, Garcia, Reyna, Boggs, and Powell – all of them had the

7   day off.  (Pfeifer Decl. ¶ 5, Garcia Decl. ¶ 4, Reyna Decl. ¶ 4, Boggs Decl. ¶ 6, Neese Decl.

8   ¶ 6; ref. Doc. #15 at 4-4A.)

9       Defendants argue that the evidence shows that Plaintiff was not prevented from

10  exhausting his administrative remedies because his allegations are demonstrably false.

11  (Doc. #48 at 6.)  They further assert that on June 26, 2007, three days before Plaintiff filed

12  his original Complaint, he submitted five inmate letters related to the above allegations

13  apparently in attempt to start the grievance process. (Id., Ex. G; ref. Doc. #1.)  Defendants

14  contend that the inmate letters were returned unprocessed because Plaintiff was far out of the

15  DO 802.08 ten-day time frame to begin a grievance.  (Id. at 6.)  They note that Plaintiff did

16  not explain why it took him nearly two years to raise those issues and did not pursue the

17  grievance further.  (Id..)

18              **2.      Plaintiff**

19      In his opposition, Plaintiff argues that he cannot be expected to comply with the

20  PLRA if he is prevented from doing so as he alleged in Count III of his Amended Complaint.

21  (Doc. #51 at 1-2.)  He asserts that if he was mistaken about the dates, that is all it was – a

22  mistake.  (Id. at 2.)  He also asserts that he was being tortured which left him

23  "psychologically devastated and traumatized" and he did his best to notify the Court of the

24  events.  (Id.)  He further asserts that it took him two years to learn how to file a civil

25  complaint.  (Id.)

26      Plaintiff also alleges that in 2007, he again submitted inmate letters and a grievance

27  about the relevant events, which were denied or went unprocessed.  (Id. at 3, ref. Doc. #38

28  pg 13-22.)   Plaintiff asserts that he then submitted a grievance appeal, which was also

1  unprocessed, and a second appeal, which was unprocessed.  (Id.)  He argues that he signed
2  his Amended Complaint under penalty of perjury and would not have done so to deliberately
3  mislead the Court.  (Id.)

4         **3.    Reply**

5         In their reply, Defendants argue that nowhere in his First Amended Complaint did
6  Plaintiff acknowledge that he might be mistaken about the dates; his allegations detail dates
7  and times, and exactly who was present.  (Doc. #52 at 1.)  They also argue that Plaintiff does
8  not rebut Boggs' declaration that he worked in Phoenix starting on July 30, 2005, and that
9  he only worked one day during the period that Plaintiff alleged that Boggs prevented him
10 from accessing the grievance system.  (Id.)  They also argue that Plaintiff does not otherwise
11 contradict Defendants' declarations or explain why he waited over a year and half before he
12 submitted inmate letters to initiate the grievance process.  (Id. at 2.)

13     **C.    Analysis**

14        The Court has the authority to dismiss a case at any time if it appears that the action
15 is frivolous, malicious, or fails to state a claim.  28 U.S.C. § 1915(e)(2)(B)(i and ii).  "[A]
16 complaint, containing as it does both factual allegations and legal conclusions, is frivolous
17 where it lacks an arguable basis either in law or in fact. . . . [T]he term 'frivolous,' when
18 applied to a complaint, embraces not only the inarguable legal conclusion, but also the
19 fanciful factual allegation."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  When
20 determining whether a complaint is frivolous, the court need not accept the allegations as
21 true, but must "pierce the veil of the complaint's factual allegations," id at 327, to determine
22 whether they are "'fanciful,' 'fantastic,' [or] 'delusional.'"  Denton v. Hernandez, 504 U.S.
23 25, 33 (1992) (quoting Neitzke, 490 U.S. at 328).  A finding of factual frivolousness is
24 appropriate when the allegations are irrational or wholly incredible.  Id.

25        Here, Plaintiff alleged that on multiple occasions over a period of more than a week,
26 Defendants used stun guns, beatings, sexual assaults, and attacks with syringes containing
27 Hepatitis C and AIDS viruses all to extract a confession to murder in a pending criminal case.
28 In Defendants' brief in response to the Wallace issue, they submitted the Arizona Court of

Appeals Memorandum Decision, filed May 31, 2007. The Memorandum Decision outlines some of the procedural history of Plaintiff's criminal case which indicates that a jury found Plaintiff guilty of two counts of first-degree burglary and one count of first-degree felony murder; on appeal the Court of Appeals vacated one burglary conviction but affirmed the remaining convictions. (Doc. # 27, Attach. A.) In the May 2007 Decision, the court of appeals stated that

> Valencia has subsequently filed at least seven petitions for post-conviction relief pursuant to Rule 32, Ariz. R. Crim. P. . . and five petitions for review, including the three consolidated here. In his first petition for post-conviction relief, Valencia raised numerous claims of ineffective assistance of counsel and requested a new trial. On review of the trial court's summary denial of relief, we granted partial relief and remanded the case to the trial court for an evidentiary hearing on the claim that trial counsel had rendered ineffective assistance by not moving to suppress Valencia's confession to police detectives. State v. Valencia, No. 2 CA-CR 01-0157-PR. . . .

> Following that evidentiary hearing, the trial court concluded that Valencia's statements to detectives had been voluntary and that the trial judge therefore would not have suppressed Valencia's statements even had counsel made such a motion. Because Valencia thus could not show prejudice resulting from trial counsel's performance, the trial court found Valencia had failed to present a colorable claim of ineffective assistance of counsel. We upheld that ruling on review. State v. Valencia, No. 2 CA-CR 2003-0270-PR (memorandum decision filed Jan. 4, 2005).

(Id.)

This Court finds that the evidence presented in the briefing on the Wallace issue – that Plaintiff did not, in fact, have pending criminal charges at the time of the incidents alleged in his Amended Complaint, that his conviction on first-degree felony murder was from 1996, that he had filed multiple petitions for post-conviction relief by 2005, and that he apparently voluntarily confessed to some participation in the crimes – undermines any credible factual basis for the allegations in Plaintiff's Amended Complaint. That is, there was simply no reason for anyone to attempt to extract a confession from Plaintiff in 2005, much less to do so in the lurid and fantastic manner alleged. The Court believes that, in its discretion, it could dismiss the Amended Complaint as frivolous. See Denton, 504 U.S. at 33. But because it also appears that Plaintiff did not exhaust his administrative remedies, the Court will dismiss on that ground.

1   Defendants have met their burden to show that Plaintiff failed to exhaust his

2   administrative remedies for the claims in his Amended Complaint.  They present Plaintiff's

3   Amended Complaint, in which Plaintiff acknowledged the existence of an administrative

4   procedure and that he had not pursued it as to any of the claims in the Amended Complaint.

5   Although Plaintiff claims that the procedure was not available to him because on specific

6   dates Defendants refused to process his informal resolutions, Defendants also submit

7   evidence that the various Defendants, who deny the allegations in the Amended Complaint,

8   were not even present on many of the dates alleged by Plaintiff.  In response, Plaintiff merely

9   asserts, in a conclusory fashion, that he got the dates wrong.  The Court also notes that

10  Plaintiff's claims regarding Defendants' alleged refusal to process grievances contain an

11  allegation of a threat to infect him with AIDS for attempting to file grievances.  (Doc. #15

12  at 5-A.)  Plaintiff also argues that nearly two years later, he again submitted inmate letters

13  and grievances – the first step of which was initiated on June 26, 2007, only three days

14  before Plaintiff filed his Complaint, which is dated June 29, 2007.  (Doc. #48, Ex. H; Doc.

15  #1.)  The Court finds that the timing of the 2007 grievances is suspect and undermines any

16  credibility regarding Plaintiff's claim that he attempted to pursue the administrative process

17  in 2005.  And Plaintiff offers no persuasive reason why he did not pursue the administrative

18  process earlier.

19  Unlike motions for summary judgment, in motions to dismiss for matters in abatement,

20  such as failure to exhaust administrative remedies, a court has the authority to resolve factual

21  disputes.  Ritza, 837 F.2d at 369.  This authority affects the standard of review – on appeal

22  the issue is not whether there are disputed issues of material fact but whether, to the extent

23  the district court made factual determinations, its determinations were clearly erroneous.  Id.

24  Reviewing the record as a whole, the Court finds that Plaintiff has failed to rebut Defendants'

25  assertion that he did not exhaust his administrative remedies.  Nor has Plaintiff persuasively

26  demonstrate that he was excused from doing so.  The Court will grant Defendants' Motion

27  to Dismiss and dismiss the claims against them without prejudice.

28

## III.     Unserved Defendants

To date, Boggs, Garcia, Control Room Officer John Doe, Notary John Doe, Ridgely, and Powell have not been served; the summons and complaints were returned unexecuted. (Doc. ##18, 19, 20, 21, 22, 23.)  They are all ADC employees, and the requirement of exhaustion of administrative remedies applies to the claims against them.  (See Doc. #15.) Because the Court has found that Defendants Pfiefer, Reyna, and Neese met their burden to show that Plaintiff failed to exhaust remedies as to the claims in the Amended Complaint, the Court will dismiss the remaining Defendants as well.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to Dismiss (Doc. #48).

(2)     Defendants' Motion to Dismiss (Doc. #48) is **granted.**

(3)     Defendants Boggs, Garcia, Control Room Officer John Doe, Notary John Doe, Ridgely, and Powell are **dismissed**.

(4)     The claims in the Amended Complaint are **dismissed without prejudice**, and the action is terminated.

(5)     The Clerk of Court must enter judgment accordingly.

DATED this 28th day of May, 2009.

David G. Campbell
United States District Judge